**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Timothy Beers

     v.                      Civil No.  15-cv-517-PB

Warden, New Hampshire
State Prison

## REPORT AND RECOMMENDATION

Timothy Beers, proceeding pro se, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  In support, Beers contends that his conviction on four counts of pattern aggravated felonious sexual assault was obtained in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. The respondent and Beers each move for summary judgment, and the motions are before the undersigned magistrate judge for a report and recommendation.

## Standard of Review

The Federal Rules of Civil Procedure, including Rule 56 governing summary judgment, apply in habeas corpus cases but only to the extent that the practice is not specified under the habeas statute.  Fed. R. Civ. P. 81(a)(4).  In the context of petitions under § 2254, the statute provides the rules of practice.  See, e.g., Torres v. Thaler, 395 F. App'x 101, 106

n.17 (5th Cir. 2010); Reid v. Warden, 2017 WL 706187, at *1 (D.N.H. Feb. 22, 2017).

A petition for a writ of habeas corpus under § 2254 may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or law or treaties of the United States." § 2254(a). A petition, however, cannot be granted unless the petitioner exhausted the available state court remedies. § 2254(b). In addition, "a federal court may not review federal claims that were procedurally defaulted in state court – that is, claims that the state court denied based on an adequate and independent state procedural rule" unless the petitioner shows cause for the default and actual prejudice from the alleged constitutional violation. Davila v. Davis, 137 S. Ct. 2058, 2064-65 (2017).

For purposes of claims that were adjudicated on the merits in state court, the petition will not be granted unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). If the federal claim was raised but was not adjudicated on the merits in state court, the federal court reviews the claim under the de novo standard. Jackson v.

Marshall, 864 F.3d 1 9 (1st Cir. 2017); Kirwan v. Spencer, 631 F.3d 582, 586 (1st Cir. 2011).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 562 U.S. 86, 99 (2011).

## Background[1]

Beers does not dispute the underlying facts in the state proceedings that pertain to his claims.  The claims raised in the petition involve questions of law.  No hearing was held in this case.

Beers's son, P.B., reported to the Hudson (New Hampshire) Police Department in February of 2011 that he had been sexually assaulted by his father when he was a child.  P.B. was twenty-one years old when he made the report.

---

[1] The background information is taken from the transcripts of Beers's criminal trial, the decision of the New Hampshire Supreme Court on Beers's direct appeal, State v. Beers, No. 2013-0840, 2015 WL 11181926 (N.H. Feb. 23, 2015), and the decision of the Merrimack County Superior Court on Beers's petition for a writ of habeas corpus, Beers v. Zenk, 217-2016-CV-00386 (N.H. Sup. Ct. Sept. 21, 2017).  The transcripts and decisions are included in that part of the record that is filed conventionally.  Doc. no. 31.

Beers was charged with four counts of pattern aggravated felonious sexual assault in violation of RSA 632-A:2, III.[2]  He was convicted following a jury trial on all four counts.[3]  P.B., his mother (Beers's former wife), and P.B.'s twin sister (Beers's daughter) testified during the trial.

During the trial, P.B. testified that his father sexually assaulted him, beginning when he was eight or nine years old. The assaults occurred once or twice a month until he was twelve or thirteen.  He provided specific and explicit details about the circumstances and activities involved in the assaults.  P.B. said that he did not report the assaults because he was afraid of his father while the assaults were occurring, that he took the abuse so that his sister would not be abused, and that later he was ashamed of himself.[4]

---

[2] "A person is guilty of aggravated felonious sexual assault when such person engages in a pattern of sexual assault against another person, not the actor's legal spouse, who is less than 16 years of age.  The mental state applicable to the underlying acts of sexual assault need not be shown with respect to the element of engaging in a pattern of sexual assault."  RSA 632-A:2, III.

[3] Beers was tried twice.  The first trial, held in March of 2013, ended in a hung jury.  The second trial, held on July 23 and 24, 2013, resulted in the convictions.

[4] He also said that Beers would wrestle with him when angry and would hurt him, which resulted in him crying and going to his room.

P.B. testified that he had a difficult time in school while
he was growing up.  He had a learning disability and was picked
on by other kids because of his difficulties in school.  His
mother testified that he had a hard time in school because of
his learning disability.

P.B.'s mother also testified that Beers was hard on P.B.
His sister said that Beers picked on P.B.  His sister also
testified that when she was eight or nine she opened the door to
P.B's room and saw Beers and P.B., who were naked, lying on
P.B.'s bed watching what she believed was pornography on the
television.  P.B. testified that his sister opened the door to
his room during one of the incidents of sexual assault.

P.B. testified that he started drinking in college and
drank more after he left college.  He said that drinking made
him feel better about himself and that some of the drinking was
because of his father.  He started smoking marijuana to help him
not drink as much.

In defense counsel's opening statement, she said that the
case against Beers was "about a baseless and offensive lie."
Trans. at 80.  She further said:  "I don't have a crystal ball.
I can't see inside [P.B.'s] head.  I don't know why he's lying."
Id. at 80-81.

In closing argument, defense counsel stated that although
the family lived in a small mobile home in a small community,

"[n]obody saw anything, nobody suspected anything, because

nothing happened."  Id. at 239.  She continued:

> This trial was short, and this trial was short because
> the State's case was weak.  . . .  Don't you think
> that if the State had some proof, some witness,
> somebody to come forward and corroborate the story,
> they would have produced that person for you? . . .
> Not one single person came in and said yes, over the
> years I noticed something, [P.B.] seemed troubled, his
> grades were falling, there was some signal that
> something wasn't right at home, but there was nothing,
> and there was nothing because Tim Beers is innocent.

 Id. at 239-40.

Defense counsel then addressed the defense theory that P.B.

was lying when he accused his father of sexual assault.  Counsel

stated:

> Maybe you can think of a time in your life when
> somebody told a lie or spread a rumor about you or
> somebody you cared about.  I want you to take a second
> to think about that if that ever happened to you.  You
> might have wondered in the circumstance why they were
> telling that lie.  You wanted to know what's
> motivating that person to do this to me, but you can't
> figure it out, you can't get in their head, you just
> don't know, and unfortunately, we can't provide you
> with any answer for why [P.B.] is lying, we don't
> know.

Id. at 40.  Counsel argued that P.B.'s testimony was implausible

and unbelievable, and then stated:

> When you're back in the jury room, you're going
> to wonder to yourselves why would he lie about
> something so serious, something so big, and you might
> have guesses and you might not be able to come up with
> the answer, and as I told you before, I really wish I

could give you an answer, and I just don't know.  All
I can do is point to the facts.

<u>Id.</u> at 244.

The prosecutor responded to defense counsel's statements in
his closing argument.  He first addressed the defense theory
that the state lacked any evidence to show that someone
suspected sexual assault or noticed signs that something was not
right in P.B.'s home.  The prosecutor argued as follows:

> [Defense counsel] is half-right in some things
> she said when she began her closing statement to you
> folks.  You see the simplest answer that's in front of
> you when you look for signs.
> There's a lesson that they teach young doctors
> when they're going through medical school, there's a
> saying, and they tell young doctors, they say "When
> you [hear] hoof beats, think horses not zebras."  So
> when someone comes into your office and they have
> sniffles and they have a fever, they want [] you to
> think—well, they want you to diagnose this person with
> a common cold, they don't want you to right off the
> bat say well, it must be malaria because that's not
> the simplest explanation.
> So when [P.B.'s mother] saw all of these signs in
> her son, signs that—like his struggles in school, any
> troubling grades, any problems he was having with
> other children in the area, she looked for the
> simplest answer, which was clearly [P.B's] learning
> disability.  There were signs probably throughout
> [P.B.'s life] that weren't easily recognizable as
> sexual assault, and that no one would jump to the
> conclusion that my child's being sexual[ly] assaulted,
> especially someone who's in [P.B.'s] position, who had
> the difficulties that he had, that other children
> don't have to go through, other families don't have to
> deal with.
> There were signs.  There were signs when he got
> to college and started drinking and abusing marijuana.
> There were signs that you look to and you think, well,
> any kid who turns 17-18, who's off on their own for
> the first time, that's something that they do.

> They didn't know that all of those things that
> they saw in [P.B.] were signs of something that was
> much deeper than just the everyday troubles he was
> going through.  They didn't know that those were signs
> of what his father had done to him years before.

Id. at 245-46.

At that point, defense counsel objected to the prosecutor's argument that certain symptoms were signs of sexual abuse because no expert had testified in support of that theory.  The prosecutor argued that because defense counsel said there were no signs of abuse, he could argue that there were signs.  The court agreed with the prosecutor that the cited symptoms could be signs of a troubled person.

When the prosecutor resumed his closing argument, he addressed the issue of P.B's credibility.  The prosecutor stated that the case would come down to whether the jury believed P.B. or not.  He reminded the jury that the judge had instructed that a victim's testimony need not be corroborated to support a conviction.  The prosecutor then said he would give the jury three reasons to believe P.B. and to convict Beers.  The first reason was the detail that P.B. provided about the assaults.

The second reason addressed defense counsel's statements that the defense could not give an answer about P.B.'s motive to lie.  The prosecutor argued that the jury should believe P.B. and stated the following:

> Defense made a big point in opening and closing,
> I'm saying a couple times, but we can't give you an
> answer as to why would [he] be lying about this,
> which, when assessing [P.B.'s] credibility, I think is
> a[n] awfully damning statement.
>     They've had multiple opportunities to figure out
> why [P.B.] would be lying about this.  Now they had a
> deposition where they had a chance to ask him
> questions themselves to figure out why [P.B.] would be
> lying about this.  They've had a previous hearing
> under oath, they had his testimony . . .

Id. at 253.  Defense counsel objected that the prosecutor was

shifting the burden of proof to the defendant.  The court ruled

that the prosecutor could talk about the prior interviews of

P.B. but that he was "running close to the edge in saying that

they have an obligation to find motive."  Id. at 254.  Defense

counsel then asked for a reinstruction on the burden of proof.

The prosecutor finished his closing, arguing that P.B. had

no motive to lie and that the nature of the crime, P.B.'s age,

his environment, and his personality kept him from disclosing

the abuse before he did.  After the prosecutor finished his

closing, the judge reinstructed the jury on the burden of proof.

The jury found Beers guilty on all charges.  He was sentenced to

ten to thirty years in prison.

Beers appealed his conviction to the New Hampshire Supreme

Court.  The questions presented on appeal were:

> 1.  Did the trial court err in allowing the State to
> argue facts not in evidence during its closing argument.

> 2.  Did the trial court err in not clearly sustaining
> Beers' objection during closing that the State was

> impermissibly shifting the burden and by failing to provide
> an immediate curative instruction.

The New Hampshire Supreme Court interpreted the first question

to raise an issue of prosecutorial misconduct during closing

argument and concluded that no misconduct occurred.  With

respect to the second question, the court noted that Beers

relied on the standard for whether a prosecutor's prejudicial

comments required a mistrial, although counsel had not requested

a mistrial.  The court concluded that the prosecutor's argument

was not an adverse comment on Beer's decision not to present

evidence.  The conviction was affirmed.

Beers, who was represented by counsel, then filed a

petition for a writ of habeas corpus in state court.  He argued

that he was entitled to a new trial because of the prosecutor's

improper closing argument, raising three issues:

> A.  Trial counsel was ineffective in failing to object
> to improper arguments made by the prosecution during
> closing arguments that conflated the credibility of the
> victim with the burden of proof thereby misstating the
> burden of proof;
> B.  The trial court erred by overruling Petitioner's
> objection to the State's closing argument whereby the State
> impermissibly shifted the burden of proof to the Petitioner
> to establish a motive for the victim to lie;
> (C)  The trial court erred when it failed to sustain
> the defense's objection after the prosecution asked the
> jury to draw inferences from facts not in evidence during
> their closing arguments.

Doc. 30-2, at *1.  The superior court concluded that the

prosecutor's statements about not needing corroboration for

P.B.'s testimony to find Beers guilty, which Beers interpreted as a misstatement of the burden of proof, was not improper.  For that reason, Beers's counsel was not constitutionally ineffective in failing to object.  The court did not address the second and third issues on the merits because they had been decided by the supreme court on direct appeal.

The habeas petition was denied.  Beers filed a notice of discretionary appeal, which was declined.

Proceeding pro se, Beers filed a petition under § 2254 in this court while his state habeas proceeding was pending.  The federal case was stayed until the state case was concluded. After the New Hampshire Supreme Court declined discretionary review of the superior court's decision on Beers's state habeas petition, Beers filed an amended petition in this court.

The undersigned magistrate judge issued a report and recommendation, finding that the amended petition included both exhausted and unexhausted claims.  I recommended that the district judge deny Beers's motion to continue the stay to allow him to exhaust the unexhausted claims and that Beers be given two options to proceed.  He could either move to amend his petition to omit the unexhausted claims and proceed with the exhausted claims or the entire petition would be dismissed.  The report and recommendation was approved; Beers moved to dismiss

the unexhausted claims; and he was permitted to proceed with his

exhausted claims.

The claims in support of Beers's petition are as follows:

2. Beers's conviction was obtained in violation of his
Fourteenth Amendment right to due process in that:
    a. The prosecutor engaged in misconduct, by
arguing that Beers did not take the opportunity to
provide the jury with a motive for why that witness
would have lied; and
    b. The trial court improperly overruled Beers's
trial counsel's objection, and failed to declare a
mistrial sua sponte, in response to the prosecutor's
closing argument, in which the prosecutor argued that
Beers did not take the opportunity to provide the jury
with a motive for why the witness would have lied.

4. Beers's conviction was obtained in violation of his
Fifth Amendment privilege against self-incrimination
as the prosecutor's closing argument indirectly
commented on Beers's failure to testify, in arguing
that Beers did not take the opportunity to provide the
jury with a motive for why a witness lied.

5. Beers's conviction was obtained in violation of his
Sixth Amendment right to the effective assistance of
counsel, in that trial counsel failed to object to the
prosecutor's closing argument, to the extent it argued
that since the victim's testimony didn't need to be
corroborated, the jury could convict Beers if the jury
believed the victim's testimony beyond a reasonable
doubt, which had the effect of misstating the burden
of proof.

 6. Beers's conviction was obtained in violation of
his Fourteenth Amendment right to due process as the
trial judge failed to sustain defense counsel's
objection that the prosecutor's closing argument
improperly asked the jury to draw inferences from
facts not in evidence.

**Discussion**

The respondent moves for summary judgment.  In support, he argues that Beers's claims are procedurally defaulted and, alternatively, fail on the merits.  In response, Beers filed a joint cross motion for summary judgment and objection and a separate motion for summary judgment.[5]

I.  <u>Beers's Motion for Summary Judgment</u> (Doc. No. 41)

Beers moves for summary judgment in his favor on the ground that "the State failed to respond."  He also asserts that he is entitled to summary judgment because the court has not appointed counsel to represent him in this proceeding and because the court and the respondent have delayed his case.  Beers is mistaken.

As the docket in this case demonstrates, Beers's case was delayed while he completed his state habeas proceeding.  The court has explained why counsel has not been appointed to represent Beers in this case.  The respondent has not failed to respond when a response was required.  The motion is denied.

---

[5] Beers's combined cross motion for summary judgment and objection (doc. no. 40) is construed as his objection to the respondent's motion for summary judgment.  <u>See</u> LR 7.1(a)(1).

13

II.   Respondent's Motion for Summary Judgment (Doc. No. 32)

The respondent argues that Beers did not exhaust the claims that he brings in support of his habeas petition and that the claims are procedurally defaulted.  The respondent also challenges the claims on the merits.

A.   Failure to Exhaust and Procedural Default

As is noted above, a federal prisoner can pursue claims under § 2254 only if he has exhausted the relief available in state court.  § 2254(b).  To exhaust federal claims in state court, "the petitioner must present the federal claim fairly and recognizably to the state courts, meaning that he must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question."  Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (internal quotation marks omitted).  A failure to exhaust federal claims may result in procedural default of those claims.  Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

To satisfy the exhaustion requirement, a petitioner must have presented the factual and legal bases for his federal claim to the state court.  Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011).  He may satisfy that requirement by "(1) citing a provision of the federal constitution; (2) presenting a

federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim; (3) citing federal constitutional precedents; or (4) claiming violation of a right specifically protected in the federal constitution." Clements, 485 F.3d at 162.  "[I]n some situations, citations to state court decisions which rely on federal law or articulation of a state claim that is, as a practical matter, indistinguishable from one arising under federal law, may suffice to satisfy the exhaustion requirement.  Id. (internal quotation marks omitted).  Further, if a state law standard is at least as protective as the federal constitutional standard, then the federal claim may be regarded as having been raised and adjudicated on the merits.  Scott v. Gelb, 810 F.3d 94, 99 (1st Cir. 2016).

The respondent contends that Beers failed to exhaust the claims because he did not use precisely the same language in state court as he uses here.  The respondent also contends that Beers did not raise federal claims.  As a result, the respondent argues, those claims were not fairly presented to the state courts.

Claim 2, which challenges the prosecutor's closing argument in response to the defense's closing argument about P.B.'s motive to lie, was presented on direct appeal and in the state habeas petition.  The New Hampshire Supreme Court recognized the

claim as raising prosecutorial misconduct that required a mistrial and analyzed it under that standard.  While the supreme court relied on New Hampshire cases, the federal nature of the claim had been raised in the briefing.

Claim 4 raises the Fifth Amendment privilege against self-incrimination that bars a prosecutor from commenting on a defendant's failure to testify.  The supreme court also recognized that theory, stating that "'[a] defendant's decision not to testify or present evidence in his own defense can provide no basis for an adverse comment by the prosecutor.'" Beers 2015 WL 11181926, at *3 (quoting State v. Fowler, 132 N.H. 540, 545 (1989)).  In Fowler, the supreme court addressed the right against self-incrimination under the Fifth and Fourteenth Amendments.  Id. at 545-46.

Claim 5, alleging ineffective assistance of counsel for failure to object to the prosecutor's remarks during closing that affected the burden of proof, was raised in the state habeas proceeding.  The Merrimack Superior Court, which decided the habeas petition, relied on State v. Thompson, 161 N.H. 507, 528 (2011), for the ineffective assistance of counsel standard. In Thompson, the New Hampshire Supreme Court applied the federal Sixth Amendment standard provided in Strickland v. Washington, 466 U.S. 668, 688 (1984).

16

Claim 6 raises the issue of whether the prosecutor argued inferences from facts not in evidence in his closing argument, which Beers raised on direct appeal and in the habeas proceeding.  Beers relied on the New Hampshire standard for determining whether an improper argument requires a mistrial, which in turn incorporates the due process federal standard. The state also cited federal law in its brief.

In addition, the federal nature of the claims was apparent to the state habeas court.  The superior court concluded as follows:

> The petitioner argues that 'the sum total of the prosecution's arguments during summation, including the 1) arguments that misstated the burden of proof[;] 2) the arguments that amounted to improper burden shifting[;] and 3) the arguments that improperly introduced facts not in evidence, violated the [p]etitioner's constitutional right to a fair trial and right to due process under Part 1, Art. 15 of the New Hampshire Constitution and the 6th and 14th Amendments to the U.S. Constitution."  (Mot. Supp. Pet'r's Request Pet. Writ of Habeas Corpus, ¶ 39.)  As the Court has determined that the prosecution did not make any improper arguments or misstatements in its closing statement, the Court cannot conclude that the petitioner's constitutional rights have been violated.

Doc. no. 30-6, at *15.

Therefore, the respondent has not shown a failure to exhaust or procedural default that bars review under § 2254.

B.  Claims on the Merits

Because the state courts adjudicated Beers's claims on the merits, they are subject to the deferential standard of review under § 2254(d).  Dorisca v. Marchilli, 941 F.3d 12, 17 1st Cir. 2019).  Under that standard, a petitioner is not entitled to relief unless the state court decision was contrary to or an unreasonable application of federal law as determined by the Supreme Court.  Id. (citing § 2254(d)).  A state court decision is contrary to federal law if it either is based on application of a legal standard that directly contradicts Supreme Court precedent or reaches a different outcome than the Supreme Court on "materially indistinguishable facts."  Bebo v. Medeiros, 906 F.3d 129, 134 (1st Cir. 2018) (internal quotation marks omitted).  "'An unreasonable application occurs when the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case.'"  Id. (quoting White v. Woodall, 572 U.S. 415, 425 (2014)).

In this case, two different courts issued decisions on Beers's claims.  The New Hampshire Supreme Court adjudicated the arguments raised in Claims 2, 4, and 6 on direct appeal, and Merrimack County Superior Court adjudicated Claim 5 but deferred to the supreme court's determinations on the other arguments.

Therefore, those decisions are reviewed under the § 2254(d) standard.  See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

### 1.  Claim 2(a) and (b) – Prosecutor's Closing Argument on Lack of Evidence of a Motive to Lie Violated Fourteenth Amendment Right to Due Process

Beers contends that the prosecutor's closing argument about the lack of evidence from the defense to show P.B.'s motive to lie violated his right to due process under the Fourteenth Amendment.  He further contends that the prosecutor engaged in misconduct and that the trial court should have declared a mistrial, sua sponte, because of that argument.  The respondent argues that the claims fail on the merits.

In deciding whether a prosecutor's comments caused a violation of a defendant's Fourteenth Amendment right to due process, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  "That question is to be answered on a case-by-case basis, . . . taking into account considerations such as whether the jury was adequately instructed, the nature and seriousness of the comments, and the weight of the evidence."  Dorisca, 941 F.3d at 23 (citing Parker v. Matthews, 567 U.S. 37, 48 (2012)).  A mistrial is required

only as "a last-resort remedy" when "the taint is ineradicable,
that is, only if the trial judge believes the jury's exposure to
the complained of evidence is likely to prove beyond realistic
hope of repair." United States v. Chisholm, 940 F.3d 119, 126
(1st Cir. 2019).  Prosecutorial misconduct causes a due process
violation only when it is of "'sufficient significance to result
in the denial of the defendant's right to a fair trial.'" Greer
v. Miller, 483 U.S. 756, 765 (1987) (quoting United States v.
Bagley, 473 U.S. 667, 676 (1985)).

The New Hampshire Supreme Court concluded that the
prosecutor's response to defense counsel's argument about P.B.'s
credibility was appropriate.  For that reason, the court found
that no misconduct occurred and no mistrial was needed.  The
supreme court explained:

> In an effort to call into question the victim's
> credibility, the defendant highlighted the victim's
> prior testimony, but then conceded that he did not
> know why, and could not "provide [the jury] with any
> answer for why," the victim would lie.  The
> prosecutor's response – that the defendant indeed had
> had two prior opportunities to examine the victim
> under oath and determine why he might be lying –
> simply highlighted evidence that was before the jury,
> and underscored the weakness in the defendant's theory
> established by the evidence and acknowledged by the
> defendant himself.  Nothing in the prosecutor's
> comments suggested that the defendant was obligated to
> prove the victim's motive to lie.  We conclude that
> the prosecutor's comments constituted a permissible
> evidence-based response to the defendant's closing
> argument.

State v. Beers, Case No. 2013-0840, at *5 (N.H. Feb. 23, 2015),
(conventionally filed, doc. 31).

As a threshold issue, the New Hampshire Supreme Court
addressed whether the challenged remarks were improper.[6]  Then,
if the remarks were improper, "[i]n determining whether the
prosecutor's remarks were harmless, [the court] evaluate[s] the
comments as a whole, not in isolation . . . and focus[es] on (1)
the severity of the misconduct, including whether it was
isolated and or deliberate; (2) whether curative instructions
were given; and (3) the strength of the evidence against [the
defendant." United States v. Pena-Santo, 809 F.3d 686, 699 (1st
Cir. 2015) (internal quotation marks omitted).

---

[6] Examples of improper statements and comment by prosecutors
include the prosecutor's personal opinion about the defendant's
guilt and his opinion that defendant opted not to plead guilty
in the hope of being convicted of only a less serious offense
than murder, Donnelly, 416 U.S. at 640; a closing argument that
characterized the defendant as an animal and gave personal
emotional reactions such as wishing the defendant's face had
been blown off or he had been killed, Darden, 477 U.S. at 180-
82; the prosecutor's misstatements of the defendant's testimony
during closing, Dorisca, 941 F.3d at 22-23; the prosecutor's
statement that immunity given to a witness meant that he was
instructed that he had to testify and not to lie, Hardy v.
Maloney, 909 F.3d 494, 501 (1st Cir. 2018); the prosecutor's
statements that the defendant "can't face the music" and "can't
stand in front of you" United States v. Gorski, 880 F.3d 27, 37
(1st Cir. 2918); the prosecutor's comment that only the
defendant knew where he was when victim's body was burned only
potentially inappropriate, Taylor v. Medeiros, 381 F. Supp. 3d
110, 119 (D. Mass. 2019).  Even in those cases, however, the
courts concluded that no due process violation occurred.

The supreme court's determination that the prosecutor's remarks were permissible is not unreasonable or at odds with the Supreme Court's precedents.  Even if the remarks had been improper, they were in response to the defense's closing argument and any misconduct was not severe.  Further, the jury was properly instructed on the state's burden of proof before the closing arguments were given, and the trial court reinstructed on the burden of proof after the prosecutor's closing.  Therefore, the New Hampshire Supreme Court's decision was neither contrary to clearly established federal law nor an unreasonable application of that law.

2.  <u>Claim 4 – Prosecutor's Closing Argument on Lack of Evidence of a Motive to Lie Violated Fifth Amendment Protection against Self-Incrimination</u>

The New Hampshire Supreme Court recognized that Beers also raised an issue that the prosecutor's remarks about the lack of defense evidence to show P.B.'s motive to lie violated his Fifth Amendment protection against self-incrimination.  The supreme court found that "that the prosecutor's statements did not amount to an adverse comment on the defendant's decision not to present evidence in his own defense." Beers, 2015 WL 11181926, at *4.  Beers is not entitled to relief under § 2254(d) based on Claim 4.

3.   Claim 5 – Ineffective Assistance of Counsel in
     Violation of the Sixth Amendment

Beers contends that his trial counsel's representation was
constitutionally ineffective because they did not object when
the prosecutor stated in closing that the jury could convict
Beers if they believed P.B.'s testimony beyond a reasonable
doubt.   Beers contends that the prosecutor's comment misstates
the burden of proof.

To succeed on a claim of ineffective assistance of counsel,
a petitioner must show both "(1) 'that counsel's representation
fell below an objective standard of reasonableness,' . . . and
(2) that any such deficiency was 'prejudicial to the defense.'"
Garza v. Idaho, 139 S. Ct. 738, 744 (2019) (quoting Strickland
v. Washington, 466 U.S. 668, 687–88 & 692 (1984)).   To succeed
on the first step of the inquiry, a petitioner must show that
his counsel's representation was "outside the wide range of
professionally competent assistance."   Id. at 690.   Prejudice
requires a showing that but for the errors in representation
there is a reasonable probability that the outcome of the
criminal trial would have been different.   Id. at 688.

In considering Beer's habeas petition, the superior court
identified the Strickland standard as the governing law for the
claim.   The court noted that Beers argued the prosecutor's
comments in closing suggested to the jury that they were

23

required to find Beers guilty if they believed P.B.'s testimony. The court also interpreted Beers's claim as challenging the jury instruction that no corroboration of the victim's testimony was necessary.[7]

The superior court relied on State v. Wilbur, No. 2011-0627, 2012 WL 12830490 at *3 (N.H. Dec. 14, 2012), in which the New Hampshire Supreme Court considered a "remarkably similar" closing argument in an aggravated felonious sexual assault case where the prosecutor argued that the victim's testimony was the truth and that if the jury believed the victim beyond a reasonable doubt no corroboration was necessary to convict the defendant. There, the supreme court held that the closing remarks were not improper and that the jury instruction, based on RSA 632-A:6, I, was correct. The superior court in Beer's case noted that the prosecutor said only that the jury may find the defendant guilty and concluded that was a correct statement of the law. As a result, the court held that counsel's failure to object to a correct statement of the law was not constitutionally deficient.

The superior court applied the Strickland standard and reasonably concluded that Beers's counsel's performance was not

---

[7] Beers did not object to that instruction at trial.

deficient.  Therefore, Beers is not entitled to relief under §
2254(d) as to Claim 5.

   4.   Claim 6 – Prosecutor's Closing Argument Asked the Jury
        to Draw Inferences from Facts not in Evidence in
        Violation of the Right to Due Process under the
        Fourteenth Amendment

   The guilt or innocence of a criminal defendant must be
"determined solely on the basis of the evidence introduced at
trial." Taylor v. Kentucky, 436 U.S. 478, 485 (1978).  When a
prosecutor improperly argues facts not in evidence, as in all
cases of alleged prosecutorial misconduct, "[t]he relevant
question is whether the prosecutor's comments so infected the
trial with unfairness as to make the resulting conviction a
denial of due process." Darden, 477 U.S. at 181 (internal
quotation marks omitted).  During closing argument, however,
prosecutors may ask the jury to use its common sense and draw
reasonable inferences from the evidence. United States v.
Ponzo, 853 F.3d 558, 583 (1st Cir. 2017).

   The challenged comments are the prosecutor's argument in
response to defense counsel's argument that the state lacked any
evidence to corroborate P.B.'s testimony.  Defense counsel
stated, in part:  "Not one single person came in and said yes,
over the years I noticed something, [P.B.] seemed troubled, his
grades were falling, there was some signal that something wasn't

right at home, but there was nothing, and there was nothing because Tim Beers is innocent." In response, the prosecutor said there were signs that P.B. had been sexually assaulted but they were hard to recognize and had not been recognized as signs of abuse. The prosecutor cited P.B.'s "difficulties . . . that other children don't have to go through" and P.B.'s drinking and use of marijuana at college and after. On appeal, Beers argued that the prosecutor's argument was improper because there was no expert testimony to show that those things were signs of sexual abuse or lay testimony to allow a reasonable inference that those were signs of abuse.

The supreme court found that the defense's argument invited the inference that P.B. had not been abused because of the lack of corroborating signs such as falling grades or things not being right at home. The court noted that under New Hampshire law, see State v. Cressey, 137 N.H. 402, 412 (1993), the relevance of behavioral evidence of sexual abuse was within the competence of the jurors. The court held that the prosecutor's argument was not improper because he could ask the jury to infer that P.B.'s problems were signs of abuse, although they had not been attributed to abuse. The court also noted that P.B. testified that his drinking and substance abuse was partly because of his father.

There was evidence that P.B. had struggled academically and socially in school, which was attributed to his learning disability.  There was also evidence that P.B. drank and used marijuana, at least in part, because of his father.  In other words, the supreme court held that the prosecutor's argument was not improper because it asked for a permissible inference based on facts that were in evidence.

That decision is neither contrary to nor an unreasonable application of federal law, and for that reason, Beers is not entitled to relief based on Claim 6.


5.  <u>Certificate of Appealability</u>

An appeal of a final order in a habeas corpus proceeding is not appealable "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1).  "A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."  § 2253(c)(2); Rules Governing § 2254 Proceedings 11(a).  For the reasons set forth above, the district judge should find that Beers has not made a substantial showing of the denial of a constitutional right and decline to issue a certificate of appealability.

## Conclusion

For the foregoing reasons, the magistrate judge recommends that the district judge grant the respondent's motion for summary judgment (document no. 32), deny the petitioner's motions for summary judgment (documents nos. 40 & 41), and decline to issue a certificate of appealability.

Any objection to this Report and Recommendation must be filed within 14 days of the receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

December 5, 2019

cc:  Timothy Beers, pro se
     Elizabeth C. Woodcock, Esq.